IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re

EGENIX, INC.,

                Debtor.

Chapter 11

Case No. 14-12818 (BLS)

Hearing Date: March 4, 2015, 11:00 a.m.
Objections Due: February 25, 2015, 4:00 p.m.

**UNITED STATES TRUSTEE'S OBJECTION TO
DEBTOR'S MOTION FOR ENTRY OF ORDER (I) AUTHORIZING DEBTOR TO
OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105,
362 AND 364(c) AND (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO DIP
LENDERS PURSUANT TO 11 U.S.C. § 364**

      Andrew R. Vara, Acting United States Trustee for Region Three ("U.S. Trustee"), by and through his counsel, files this Objection to Debtor's Motion for Entry Of Order (I) Authorizing Debtor to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 362 and 364(c) and (II) Granting Liens and Superpriority Claims to Dip Lenders Pursuant to 11 U.S.C. § 364 (Dkt. No. 86) (the "Motion")[1] as follows:

**JURISDICTION**

      1.      Pursuant to i) 28 U.S.C. § 1334; ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this Objection.

      2.      The U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and

---

[1]   Terms shall have the same meaning as ascribed to them in the Motion.

interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest…that the Trustee has standing to attempt to prevent circumvention of that responsibility." ); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for 'protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

3.      The U.S. Trustee has standing to be heard on the Motion pursuant to 11 U.S.C. § 307.

**STATEMENT OF FACTS**

4.      On December 28, 2014, the Debtor filed its voluntary petition under Chapter 11. The U.S. Trustee appointed an official committee of unsecured creditors in this case on January 22, 2015.   The Debtor remains in possession of its assets and continues to manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      The Debtor filed the Motion on February 11, 2015.   The U.S. Trustee filed his Motion for Entry of an Order Converting the Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b)

(Dkt. No. 87) (the "Motion to Convert") on the same day. The Motion to Convert states general opposition to debtor-in-possession ("DIP") financing in this case.[2]

6. Accompanying the first day motions was the Declaration of William T. Nolan in Support of Chapter 11 Petition and First Day Pleadings ("Nolan Declaration") (Dkt. No. 9). The Nolan Declaration indicated that the Debtor has approximately $3.6 million of unsecured debt, with $2 million of that amount owed to Denan, Inc. under the terms of a promissory note. The remaining $1.6 million was represented as being owed to various other creditors. The Debtor does not have any secured debt. As of the petition date the Debtor had approximately $600,000 in its bank account.

7. The purported objective of filing the chapter 11 case as set forth in the Nolan Declaration was to restructure the balance sheet to facilitate raising additional capital investment to fund operations and ongoing research. Nolan Declaration at ¶ 24. Devonshire Holdings, Inc. ("Devonshire") and William T. Nolan ("Mr. Nolan") were retained prepetition as investment banker and financial advisor to the debtor to assist in raising additional capital. *Id.* at ¶¶ 3, 20-23. Devonshire and Mr. Nolan were unable to attract new capital investment prior to the filing of the petition. *Id.* at ¶¶ 20-23.

8. The Debtor also estimated that the monthly burn rate during the pendency of its chapter 11 case to be approximately $300,000.

9. The Debtor seeks final Court approval of $1.3 million in DIP financing to be supplied by a group of DIP Lenders comprised of Lionel Goldfrank, III; John T. Reid, Ph.D.; David Clapp; Denan, Inc.; W. James Tozer, Jr.; and Paul Schwartz. Motion at ¶ (a). Aside

---

[2] The Motion to Convert contains a lengthy description of the facts in this case, including actions of management leading up to the bankruptcy and continuing postpetition. This Objection incorporates the Motion to Convert and its Exhibits as if fully set forth herein.

from Paul Schwartz, the DIP Lenders are insiders as defined by § 101(31) of the Bankruptcy Code. Lionel Goldfrank, III is the current chairman of the Debtor's board of directors. John T. Reid is another of the Debtor's directors. David Clapp and W. James Tozer, Jr. are corporate advisors to the company. Denan, Inc. is controlled by Dendy and Andrea Young, who are both on the Debtor's board of directors as well. Insiders have committed to fund at least $1.2 of the $1.3 million sought in the Motion.[3] Mr. Schwartz's involvement with the company is not known. The DIP Lenders' relationships with the Debtor are not disclosed in the Motion.

10. The Motion seeks to grant the DIP Lenders liens in all of the Debtor's property, "[t]he property of the Debtor that is subject to the aforesaid perfected liens and/or security interests in favor of the DIP Lenders shall include, but not be limited to, all assets and property of the Debtor and its estate, whether now owned or existing or hereafter acquired, created or arising and wherever located (collectively, the "DIP Collateral")." Motion at p. 7 (Liens, Security, and Priority). This security interest appears to encompass any potential litigation claims that may be pursued against the Debtor's management, including those under chapter 5.

11. The Motion also seeks indemnification for the DIP Lenders in connection with the financing contemplated by the Term Sheet or the use or the proposed use of the proceeds thereof. Motion at p. 13-14 (Indemnification).

12. The Motion seeks a release for the benefit of the DIP Lenders. Motion at p. 13 (Release from Lending Obligations).

---

[3] Lionel Goldfrank, III received loan repayments of approximately $1.1 million from December 31, 2012 to December 31, 2013.

13. The Motion does not contain any description regarding the efforts undertaken to procure financing from any other party on any other terms. The Motion attaches a Term Sheet and not an executed credit agreement.

## ARGUMENT

**DIP Financing Given the Facts and Circumstances of this Case is Not Appropriate**

14. An insider DIP loan should be carefully scrutinized. In *In re Philadelphia Newspapers, LLC*, 445 B.R. 450 (Bankr. E.D. Pa. 2010), the court indicated that the fact a proposed DIP lender was an insider made it even less likely that a DIP loan funded by him could be approved. 445 B.R. at 465. *Philadelphia Newspapers* involved competing DIP financing packages and the insider made an application for substantial contribution for helping to improve the terms of the ultimate DIP financing supplied by another party. Here, there is no evidence that the Debtor sought financing from any other parties, other than insiders.

15. It is not appropriate under the facts and circumstances of this case for the insider DIP Lenders to take a security interest in potential litigation against current and former management. As indicated in the Motion to Convert, significant transfers were made to Donald Fresne in the year leading up to the Petition Date. The Debtor acknowledged that current management unsuccessfully sought to recover $150,000 transferred to Mr. Fresne less than two weeks before the Petition Date. In addition to the known claims against Donald Fresne, there appears to be potential claims against other members of management. There are potential claims against Lionel Goldfrank, III for the loan repayments of over $1.1 million which took place in 2013. Given that at least some of the proposed insider DIP Lenders were directly involved in the activities that may result in litigation claims against management, DIP financing that includes a lien or security interest on such litigation and its proceeds is wholly inappropriate.

16.     Providing the DIP Lenders, their affiliates and their respective officers, directors, employees, advisors and agents, indemnification under the DIP financing is also inappropriate in this case. Indemnification in these circumstances provides the insider DIP Lenders yet another avenue to attempt to shield themselves from accountability to the other stakeholders of the Debtor.

17.     The provision for the release benefitting the DIP Lenders is problematic for the same reasons. When three of five insiders are represented on the Debtor's board of directors it is impossible to ascertain whether negotiations were truly at arm's length. No representations were made that a special committee of the board of directors represented the Debtor in reaching the terms of the DIP financing. There is no evidence this loan was shopped. The language of the provision also leaves the release subject to terms and conditions acceptable to the DIP Lenders. It is unclear whether those terms and conditions are capable of being expanded beyond what is contemplated in the Term Sheet, and the absence of an executed credit agreement compounds that problem.

18.     It is often said that "the conduct of bankruptcy proceedings not only should be right but must seem right." *In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966). The terms and conditions sought in the proposed DIP financing sought by the insider DIP Lenders are inappropriate in this case. The Debtor does not need a loan from insiders; it only needs the return of improper transfers to be sufficiently funded for the current stage of the case.

19.     The U.S. Trustee leaves Debtor to its burden and reserves all discovery rights.

Case 14-12818-BLS    Doc 103    Filed 02/25/15    Page 7 of 7

Case 14-12818-BLS Doc 103 Filed 02/25/15 Page 7 of 7

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the Motion and/or granting such other relief that this Court deems fair and just.

Dated: February 25, 2015
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
By: */s/*
Timothy J. Fox, Jr., Esq.
Trial Attorney
Office of the United States Trustee
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)