**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EGENIX, INC., | ) | Case No. 14-12818 (BLS) |
| | ) | |
| Debtor.[1] | ) | |

**OBJECTION OF DENAN, INC. TO DEBTOR'S MOTION FOR ENTRY OF ORDER (1) AUTHORIZING DEBTOR TO OBTAIN SUPPLEMENTAL POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362 AND 364(c) AND (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO DIP LENDERS PURSUANT TO 11 U.S.C. § 364**

Denan, Inc. ("Denan"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the motion of Egenix, Inc. (the "Debtor") for entry of an order (i) authorizing the Debtor to obtain supplemental postpetition secured financing pursuant to 11 U.S.C. §§ 105(a), 362 and 364(c) and (ii) granting liens and Superpriority claims to DIP lenders pursuant to 11 U.S.C. § 364 (the "DIP II Motion"). In support of the Objection, Denan respectfully states as follows:

## Background

1. On December 28, 2014, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On January 22, 2015, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors in this case (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code.

[1] The last four digits of the Debtor's federal identification number are 0172. The mailing address for the Debtor is 2363 Clove Road, LaGrangeville, NY 12540.

3. On February 11, 2015, the U.S. Trustee filed a Motion for Entry of an Order Converting the Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b) [Docket No. 87] (the "Motion to Convert"). In the Motion to Convert, the U.S. Trustee asserted, *inter alia*, that the Debtor lacked "a reasonable likelihood of rehabilitation" and that "further time spent in chapter 11 would only result in continuing loss to or diminution of the estate." Motion to Convert at ¶ 4.

4. On February 25, 2015, the Debtor filed its objection to the Motion to Convert [Docket No. 104] (the "Objection to Conversion"). In the Objection to Conversion, the Debtor argued, *inter alia*, that it was working towards a meeting on March 31, 2015 with one of its contract research organizations, in which the research organization would detail the results of its work for the Debtor. The Debtor also expected to receive critical test results in April from the research organization that, if "even moderately positive," would enable the Debtor "to attract additional debtor-in-possession [ ] financing—and then exit financing—to facilitate its rapid emergence from chapter 11." Objection to Conversion at 4.

5. On March 19, 2015, after a hearing, the Court entered an order denying the Motion to Convert without prejudice.

6. On March 19, 2015, the Court also entered an order [Docket No. 137] approving debtor-in-possession financing in the principal amount of $1,200,000 ("DIP I"). The lenders to DIP I were: Denan, Lionel Goldfrank, III, John T. Reid, David Clapp, and W. James Tozer, Jr. (the "DIP I Lenders").

7. In the DIP II Motion, the Debtor now seeks a $3.2 million in new debtor-in-possession financing (the "Proposed DIP II"). The Proposed DIP II would be funded by all of the DIP I Lenders other than Denan, as well as one additional Lender, equity holder Victor F. Keen (the "Proposed DIP II Lenders"). The Proposed DIP II would be used to (i) repay DIP I in

full, and (ii) fund the Debtor's operations through mid-September, in accordance with a proposed budget.

8. The Debtor states in the DIP Motion that the Debtor will run out of cash in late May or early June unless it receives additional funding through the Proposed DIP Financing. DIP Motion at ¶ 9. If the Proposed DIP II is approved, the Debtor expects to "have sufficient funding to negotiate, file, confirm and consummate a plan of reorganization—or alternatively to maximize value though a sale of substantially all of the Debtor's assets." *Id.* The Proposed DIP II requires the Debtor to file a plan of reorganization by June 19, 2015 and seeks to provide funding to the Debtor through the effective date of a plan of reorganization in early to mid-September. DIP Motion at 5-6.

9. Denan is one of the largest unsecured creditors, if not the largest unsecured creditor, of the estate with a claim of over $2 million.

## Objection

### A. The Debtor's Path Forward Is Not Viable and the Amount and Duration of the Proposed DIP II Will Deplete Creditor Recoveries.

10. Denan does not dispute that the Debtor has an immediate need for additional financing to continue its operations. The Debtor is a biotechnology development company, in its nascent stages, that generates no revenue. However, Denan objects to the funding amounts sought and the proposed path forward outlined in the DIP II Motion.

11. Under the Proposed DIP II, the Debtor would incur $3.2 million in financing to both repay DIP I and fund its operations through the effective date of a yet-to-be-negotiated plan of reorganization. The terms of the Proposed DIP II require the Debtor to file a plan of reorganization, and therefore find an investor who will provide viable exit financing, by June 19, 2015.

12. In order for the Debtor to achieve this milestone, it needs to attract one or more new investors that are willing to provide enough capital to pay-off over $3.2 million in DIP financing and provide sufficient financing for the Debtor's operations going forward. Additional exit financing above those amounts would be needed in order to provide a meaningful recovery to unsecured creditors.[2]

13. However, the Debtor has not shown, in the DIP II Motion or elsewhere, that it has a single investor interested in providing the Debtor with this much-needed exit funding. Despite a reportedly successful meeting with the Debtor's contract research organization in March, the Debtor has not lined up any new funding to support a plan of reorganization. In fact, the Proposed DIP II Lenders are basically the same people who provided DIP I and who had invested in the Debtor prior to the bankruptcy. No "new" investor has been found. The Proposed DIP II is thus premised on nothing more than the Debtor's continued *hope* that it will secure, in the next month, one or more new investors to fund a plan of reorganization. Given that the Debtor has tried, unsuccessfully, to secure new capital since January, it seems highly unlikely that continuing down the same path will result in new investors stepping forward with funding now.

14. If no investor is found, then DIP II will result in nothing more than either the conversion of this case or the Proposed DIP II Lenders owning the Debtor when the money runs out, with no or nominal return to unsecured creditors. The Court should not hand the Proposed DIP II Lenders the company by approving DIP II particularly where, as outlined below, the Debtor may have a better option in the alternative transaction that Denan is pursuing.

---

[2] Even if the Debtor were to reduce the amount of unsecured claims by successfully objecting to certain claims, it will nonetheless incur significant additional administrative expenses in the process.

### B. Denan Is Pursuing an Alternative Transaction that Requires Significantly Less Additional DIP Financing and Maximizes Value for Unsecured Creditors.

15. It is increasingly clear that the Debtor's strategy—to attract new investors to fund a plan of reorganization—has simply not worked. In continuing down this path, the Debtor is succeeding only in further diminishing, and possibly eradicating, creditor recoveries by incurring millions of dollars in additional DIP financing and administrative expenses, with no prospect of new funding down the road. Instead, the Debtor needs to pursue a sale process *now* to maximize creditor recoveries prior to incurring insurmountable secured debt and administrative claims.

16. To that end, Denan is preparing an offer to serve as a stalking horse bidder in connection with a sale process pursuant to Section 363 of the Bankruptcy Code. While all of the terms of the Denan bid are not yet finalized, Denan believes that, when finalized, the Denan bid will provide a guaranteed return to unsecured creditors through, among other things (a) Denan's agreement not to take a distribution on account of its unsecured claim of in excess of $2 million; and (b) new cash consideration that Denan is willing to provide as part of a bid.

17. Furthermore, once a stalking horse agreement with Denan is finalized and agreed to by the Debtor, Denan is prepared to provide interim debtor-in-possession financing that will both refinance the existing DIP I and provide sufficient funds to enable the Debtor to get through a sale process. Denan's proposed timeline would be shorter than Debtor's current timeline and contemplates a sale in early July. This shorter timeframe requires less financing, and the Denan DIP would be in an amount significantly lower than the proposed DIP II. With lower secured debt, and less unsecured debt (through Denan's agreement not to take a distribution on account of its claim) Denan's proposal maximizes return to unsecured creditors.

18. The sale process proposed by Denan will give the Debtor a marketing period to solicit higher and better bids on a timeframe that is slightly longer than the June 19, 2015 deadline contained in DIP II, with an auction at the conclusion of the bidding process.

19. Denan hopes to have the stalking horse agreement and financing in place in advance of the hearing on the DIP II Motion. Denan anticipates that the Denan financing will be on substantially similar terms to the proposed DIP II - except that it will be for a smaller amount and the milestones in the Denan financing will be tied to the sale process and not a plan of reorganization.

20. It is imperative that the Debtor shift its focus to a sale process *now* to avoid incurring additional administrative expenses that will deplete creditor recoveries. The terms of the DIP Motion purport to keep the Debtor on a short leash by calling for repayment of the DIP, in full, if no plan of reorganization is on file by June 19. But that milestone provides little comfort because the Debtor would continue to incur administrative expenses after that date, likely for many more weeks and possibly months, while it markets its assets for sale or structures another alternative transaction. During that time, if the Proposed DIP Financing is approved in the amount that the Debtor seeks, the Debtor will easily saddle itself with millions of dollars in additional debt, which will ultimately deplete creditor recoveries and likely result in either the conversion of the case or the Proposed DIP II lenders owning the company for no additional investment.

21. In advance of the hearing on this motion, Denan intends to have in place an alternative transaction, including alternative DIP financing, that is viable and would significantly enhance creditor recoveries, but only if the Debtor shifts gears to a sale process. If the Debtor does not move forward with the proposed Denan financing and sale process, but instead incurs

millions of dollars in additional DIP financing, the additional administrative expenses that will accumulate between now and September will wipe out any creditor recoveries.

WHEREFORE, Denan respectfully requests that this Court (i) deny the DIP II Motion and (ii) grant such other relief as may be just and proper.

**DATED: May 20, 2015.**

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: *__/s/ Jody C. Barillare__*
Jody C. Barillare, Esq. (#5107)
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, DE 19801
Phone: (302) 574-3000
Facsimile (302) 574-3001
E-mail: jbarillare@morganlewis.com

-and-

Andrew J. Gallo (admitted *pro hac vice*)
Ainsley Moloney
One Federal Street
Boston, MA 02110
Telephone: (617) 951-8000
Facsimile: (617) 951-8736

*Counsel to Denan, Inc.*