## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
EGENIX, INC.,                                           :    Case No. 14-12818 (BLS)
                                                        :
            Debtor.[1]                                  :    **Related to Docket No. 247**
                                                        :
------------------------------------------------------- x

### ORDER (I) AUTHORIZING DEBTOR TO OBTAIN ALTERNATIVE POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362 AND 364 AND (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO DIP LENDER PURSUANT TO 11 U.S.C. § 364

Upon the motion (the "Motion")[2] of Egenix, Inc., the debtor and debtor-in-

possession in the above-captioned chapter 11 case (the "Debtor"), pursuant to sections 105(a),

362 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking,

among other things, entry of an order (this "DIP Order"):

(a)     authorizing the Debtor to obtain postpetition financing (the "DIP Financing"),

        consisting of a first-lien superpriority term loan facility in the aggregate principal

        amount of $2,367,500 (the "DIP Loan") from Denan, Inc. or a designated affiliate

        (the "DIP Lender"):

---

[1]     The last four digits of the Debtor's federal tax identification number are 0172.  The mailing address for the Debtor is 2363 Clove Road, LaGrangeville, NY 12540.

[2]     All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(b)     authorizing the Debtor to execute and deliver, and incur all liabilities and

obligations under:

(i)     that certain Supplemental Debtor-In-Possession Financing Term Sheet, dated as of June 9, 2015, as amended, modified, restated or supplemented in accordance with the terms thereof or hereof (the "Term Sheet"), a copy of which is attached hereto as Exhibit 3, and perform all such other and further acts as may be required in connection with the respective DIP Documents;[3] and

(ii)    all other agreements, documents, notes or instruments as may be required, necessary or desirable (including all collateral documents) and which are executed or delivered in connection with the Term Sheet, including the budget attached hereto as Exhibit 1 (the "Budget") and the professional fee budget attached hereto as Exhibit 2 (the "Professional Fee Budget");

(c)     authorizing the Debtor to use proceeds of the DIP Loan solely as expressly

permitted in the DIP Documents, including (i) to repay in full the Initial Funding

Amounts (as defined below) and any interest due under the Prior DIP Financing

(as defined below), and (ii) to fund the Debtor's operations in accordance with the

Budget and any permitted variances;

(d)     granting automatically perfected security interests in and liens on all of the DIP

Collateral (as defined below) to the DIP Lender, and granting superpriority

administrative expense status to the DIP Obligations (as defined below), in each

case on the terms and subject to the relative priorities set forth in the DIP

Documents;

---

[3]     "DIP Documents" shall mean, collectively, any collateral documents, guaranties, the Term Sheet, the Budget, the Professional Fee Budget and all such instruments and documents as may be executed and delivered in connection with or relating to the DIP Loan, the DIP Order and any certificate or other document made or delivered pursuant hereto or thereto.

(e)     authorizing the Debtor to pay the principal, interest, fees, expenses, disbursements and other amounts payable under the DIP Documents as such amounts become due and payable;

(f)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Order and the other DIP Documents; and

(g)     granting the Debtor such other and further relief as is just and proper;

and this court (the "Court") having considered the Motion and the exhibits attached thereto; and a hearing to consider entry of the DIP Order having been held before the Court on June 19, 2015 (the "Hearing"); and upon all of the pleadings filed with the Court, all evidence presented in support of the DIP Order, the arguments of counsel stated on the record of the Hearing and all of the proceedings held before the Court; and due and sufficient notice of the Motion and the relief requested therein having been given under the particular circumstances, and it appearing that no other or further notice need be provided; and after due deliberation and consideration, and good and sufficient cause appearing therefor, it is hereby

## FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:[4]

1.     **Motion Granted**. The Motion is GRANTED on the terms and conditions set forth herein and all objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

2.     **Commencement of the Case**. On December 28, 2014 (the "Petition Date"), the Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business and

---

[4]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

      3.       **Jurisdiction and Venue**. The Court has jurisdiction over the Chapter 11 Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      4.       **Creditors' Committee Formation**. On January 22, 2015, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 46].

      5.       **Prior DIP Financing**. By order entered on March 19, 2015 [Docket No. 137] (the "Prior DIP Order"), the Court approved debtor-in-possession financing (the "Prior DIP Financing") in the principal amount of $1,200,000, funded from each of the following persons or entities (each, an "Initial Lender" and, collectively, the "Initial Lenders") in the amounts set forth in the term sheet attached to the Prior DIP Order (the "Prior Term Sheet") and below (each, an "Initial Funding Amount" and, collectively, the "Initial Funding Amounts"):

| Initial Lender | Initial Funding Amounts |
|---|---|
| Lionel Goldfrank, III | $600,000 |
| John T. Reid, Ph.D. | $250,000 |
| David Clapp | $150,000 |
| Denan, Inc. | $100,000 |
| W. James Tozer, Jr. | $100,000 |
| Total | $1,200,000 |

      6.       **Notice**. Notice of the relief sought by the Motion and the Hearing was served by first-class U.S. mail (or by electronic mail, to those parties providing written consent) on the following parties: (i) the U.S. Trustee; (ii) counsel to the Initial Lenders; (iii) counsel to

4

the DIP Lender; (iv) counsel to the Committee; and (v) all parties that have requested notice pursuant to Bankruptcy Rule 2002. Notice of the Motion, the relief sought by the Motion, the Hearing and the DIP Order has been provided in accordance with the Bankruptcy Rules and Local Rules and is deemed good and sufficient notice thereof. No other notice need be provided for entry of the DIP Order.

       7.    **Findings Regarding the DIP Financing**.

       (a)    A critical need exists for the Debtor to obtain postpetition financing to continue the operation of its business. The use of the Debtor's cash on hand would be insufficient to meet the Debtor's postpetition liquidity needs.

       (b)    The Debtor is unable to obtain the required funds (i) in the forms of (1) unsecured credit or debt allowable under section 503(b)(l) of the Bankruptcy Code; (2) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code; or (3) unsecured debt having the priority afforded by section 364(c)(l) of the Bankruptcy Code; or (ii) on terms more favorable than those embodied in the Term Sheet and the other DIP Documents. The DIP Lender is prepared to enter into the DIP Financing solely on the terms set forth in the Term Sheet, the DIP Order and the other DIP Documents.

       (c)    The terms of the DIP Financing are fair, just and reasonable under the circumstances, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms of the DIP Financing have been negotiated in good faith and at arms'-length by and between the Debtor and the DIP Lender. Any credit extended or other indebtedness or liabilities arising under, in respect of, or in connection with the DIP Financing, the Term Sheet, the DIP Order or any other DIP Document, shall be deemed to have been extended in "good faith" by the

5

DIP Lender as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections afforded by section 364(e) of the Bankruptcy Code, and the DIP Lender's claims, the DIP Superpriority Claims (as defined below), the DIP Liens (as defined below) and other protections granted pursuant to the DIP Order and the other DIP Documents, shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP Order or any portion hereof is vacated, reversed, amended or modified, on appeal or otherwise.

(d)     The relief requested in the Motion is necessary, essential and appropriate for the management and preservation of the Debtor's assets and property, and is in the best interests of the Debtor, its estate and its creditors and interest holders.

8.     **Authorization of the DIP Financing**.

(a)     The DIP Documents, including the Term Sheet attached hereto as Exhibit 3, the Budget and the Professional Fee Budget, are approved, and the Debtor is hereby authorized to execute and enter into, deliver and perform all obligations under, the DIP Documents. The DIP Order and the other DIP Documents shall govern the respective financial and credit accommodations to be provided to the Debtor by the DIP Lender in connection with the DIP Financing.

(b)     The Debtor is hereby immediately authorized to borrow the full amount of the DIP Loan, which shall be used solely as expressly provided in the DIP Order and the other applicable DIP Documents, including the Budget and the Professional Fee Budget. The Debtor is authorized to pay and perform all "DIP Obligations" as that term is defined below.

(c)     Notwithstanding the Budget, so long as no Termination Event (as defined below) has occurred, the Debtor shall be authorized to use the proceeds of the DIP Loans in

6

accordance with the Budget and the other applicable DIP Documents in an amount that would

not cause the Debtor to use proceeds of the DIP Loans in an aggregate amount greater than, at

any given time, 10% of the Budget (a "Permitted Variance"). If the aggregate amount of any

proceeds of the DIP Loans actually used by the Debtor, measured once every two weeks, is less

than the aggregate amount of proceeds of the DIP Loan available for use by the Debtor in the

Budget or Professional Fee Budget during such period, then the Debtor may carry over any such

unused amount to the future periods in the Budget or Professional Fee Budget, as applicable.

      (d)     In furtherance of the foregoing and without further approval of this Court,

the Debtor is hereby authorized to perform all acts, to make, execute and deliver all instruments

and documents, and to pay all related fees, that may be required or necessary for the Debtor's

performance of its obligations under the DIP Financing, including, without limitation:

          (i)      the execution, delivery and performance of the respective DIP Documents and any security and pledge agreements, financing statements and mortgages contemplated by the DIP Documents;

          (ii)     the execution, delivery and performance of one or more non-material amendments, waivers, consents or other modifications to and under the respective DIP Documents, in each case in such form as the Debtor, the Committee and the DIP Lender may agree; provided, however, that any material amendments, waivers, consents or other modifications to and under the respective DIP Documents shall be subject to further order of the Court;

          (iii)    for the avoidance of doubt, the Debtor may amend the Budget with the written consent of the DIP Lender and in consultation with the Committee provided that the amount of funding provided pursuant to the Budget shall not exceed the total amount of the DIP Loan authorized by this DIP Order;

          (iv)    the non-refundable payment of principal and interest under, and any fees referred to in, the respective DIP Documents, and such costs and expenses as may be due in accordance with the respective DIP Documents; and

          (v)     the performance of all other acts required under, or in connection with, the DIP Documents.

(e)       All of the DIP Liens shall be effective and perfected as of the date of entry of the DIP Order without the necessity of the execution, recording or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements or instruments.

(f)       The Term Sheet and the DIP Obligations constitute valid, binding and non-avoidable obligations of the Debtor enforceable against it, and each of its successors and assigns, and each person or entity party to the DIP Documents in accordance with the respective terms of the DIP Order and the other DIP Documents, and shall survive the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (a "Successor Case").

(g)       No obligation, payment, transfer or grant of security under the DIP Order or the other DIP Documents shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity, except as provided in the DIP Order or the other DIP Documents.

(h)       For purposes of the DIP Order, the term "DIP Obligations" shall mean the DIP Loan, all other "DIP Obligations" (as defined in the Term Sheet), all interest thereon and all fees, costs, expenses, indemnification obligations and other liabilities, owing by the Debtor to the DIP Lender, in accordance with and relating to the DIP Order or the other DIP Documents relating to the DIP Loan.

8

(i)     The DIP Loan shall (i) be evidenced by the books and records of the DIP Lender and, upon the request of the DIP Lender, a note executed and delivered to the DIP Lender by the Debtor in accordance with the terms of the DIP Documents, which note shall evidence the DIP Loan in addition to such accounts and records; (ii) bear interest and incur fees at the rates set forth in the Term Sheet; (iii) be secured in the manner specified below and under the applicable DIP Documents; (iv) be payable in accordance with the applicable DIP Documents; and (v) otherwise be governed by the terms set forth in the DIP Order and the other DIP Documents.

(j)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Lender, subject in all respects to the DIP Documents, to perform any act authorized or permitted under or by virtue of the DIP Order or any of the other DIP Documents, including, without limitation, (i) to implement the DIP Financing authorized by the DIP Order and pursuant to the terms of the DIP Documents; (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral; and (iii) to assess, charge, collect, advance, deduct and receive payments with respect to the respective DIP Obligations, including, without limitation, all principal, interest, fees, costs and expenses permitted under the DIP Documents, and apply such payments to the respective DIP Obligations pursuant to the DIP Order and the other DIP Documents.

9.     **Funding by DIP Lender**.  Upon entry of the DIP Order, the DIP Lender shall send by wire transfer the full amount of the DIP Loan to a bank account designated by the Debtor.

9

10.    **Conditions Precedent**. The DIP Lender shall have no obligation to make any DIP Loans or any other financial accommodation under the respective DIP Documents unless the conditions precedent to make such extensions of credit under the respective DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

11.    **Use of DIP Loan Proceeds**. The Debtor shall use the proceeds of the DIP Loan solely as expressly permitted in the DIP Documents, including (i) to indefeasibly repay in full in cash the Initial Funding Amounts and any interest due under the Prior DIP Financing (collectively the "Payoff Amounts"), and (ii) to fund the Debtor's operations in accordance with the Budget and permitted variances.

12.    **Repayment of Prior DIP Financing**.

(a)    The Payoff Amounts with respect to the Prior DIP Financing shall consist of the following:

| Initial Lender | Initial Funding Amounts | Interest Due | Payoff Amounts |
|---|---|---|---|
| Lionel Goldfrank, III | $600,000 | $8,679.45 | $608,679.45 |
| John T. Reid, Ph.D. | $250,000 | $3,616.44 | $253,616.44 |
| David Clapp | $150,000 | $2,169.86 | $152,169.86 |
| Denan, Inc. | $100,000 | $1,446.58 | $101,446.58 |
| W. James Tozer, Jr. | $100,000 | $1,446.58 | $101,446.58 |
| **Total** | **$1,200,000** | **$17,358.90** | **$1,217,358.90** |

(b)    Upon the indefeasible payment in full in cash by the Debtor of the Payoff Amounts set forth in paragraph 12(a) above to each Initial Lender: (i) the Prior DIP Financing shall be deemed to have been repaid in full; (ii) subject to paragraph 12(d) of this DIP Order, all liens, claims and security interests granted in connection with the Prior DIP Financing shall be deemed released, and any and all obligations of the Debtor under such Prior DIP Financing shall be deemed satisfied; and (iii) the Debtor, on behalf of itself and its estate, shall be deemed to

10

have released the Initial Lenders, solely in their capacity as the Initial Lenders, from any and all claims, obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Documents (as defined in the Prior DIP Order) or the Prior DIP Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to subordinate its recovery or to pay or otherwise fund the Carve Out expenses).

(c)     Notwithstanding anything in this DIP Order to the contrary, until the payment of the Payoff Amounts pursuant to Paragraph 12(b) above, the DIP Superpriority Claims (as defined below) and the DIP Liens (as defined below) granted to the DIP Lender pursuant to this DIP Order shall be junior in all respects to the DIP Superpriority Claims (as defined in the Initial DIP Order) and the DIP Liens (as defined in the Initial DIP Order) granted to the Initial Lenders under the Prior DIP Order.

(d)     Notwithstanding anything in this DIP Order to the contrary, in the event a claim or cause of action subject to indemnity in accordance with paragraph 21 of the Prior DIP Order (an "Indemnifiable Claim") is asserted against the Initial DIP Lenders, such Indemnifiable Claim shall be secured by DIP Liens (as defined in the Prior DIP Order) and give rise to a DIP Superpriority Claim (as defined in the Prior DIP Order); provided, however, that such DIP Liens and Superpriority Claims in favor of the Initial DIP Lenders shall be junior in priority only to the Carve Out (as defined in this DIP Order), the DIP Liens (as defined in this DIP Order) in favor of the DIP Lender and the DIP Superpriority Claims (as defined in this DIP Order) in favor of the DIP Lender.

13.     **DIP Superpriority Claims**.  Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Obligations constitute (without the need to file a proof of claim) superpriority

11

claims (the "DIP Superiority Claims") against the Debtor, with priority, subject to paragraph 12(c) of this DIP Order, over any and all administrative expenses of the Debtor, whether now existing or hereafter arising or incurred, of any kind whatsoever, including any and all administrative expenses or other claims of the kind specified in or arising under sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, whether now in existence or hereafter incurred by the Debtor, and shall at all times be senior to the rights of the Debtor, the Debtor's estate and any successor trustee, estate representative or any creditor, in the Chapter 11 Case or any Successor Case; provided, however, that the DIP Superpriority Claims shall be subordinate to the Carve Out (as defined below). The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition assets of the Debtor, including, but not limited to, the DIP Collateral.

      14.    **DIP Liens**.

      (a)    As security for the full and timely payment of the DIP Obligations, effective upon the entry of the DIP Order, the DIP Lender is hereby granted, pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, non-avoidable and fully perfected security interests in and liens and mortgages (collectively, the "DIP Liens") upon all DIP Collateral, which shall, subject to paragraph 12(c) of this DIP Order, (i) constitute first-priority security interests in and liens upon all DIP Collateral and (ii) be subordinate only to the Carve Out.

      (b)    As used herein, "DIP Collateral" shall mean all assets and property of the Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts,

12

general intangibles, instruments, equipment, accounts and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, trade-names and other intellectual property, all equity interests, all books and records relating to the foregoing, all other personal and real property of the Debtor, all causes of action of the Debtor (including causes of action under section 549 of the Bankruptcy Code) other than those excluded below, and all other collateral pledged under the DIP Documents and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of Delaware (and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof)); provided, however, that "DIP Collateral" shall not include (i) actions arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code or any actions that may exist against the Debtor's current or former officers or directors (collectively, the "Causes of Action"), or (ii) the proceeds of such Causes of Action. Moreover, the DIP Lender's rights, if any, to share in the proceeds of any Causes of Action in connection with any unpaid DIP Obligations shall be subordinated to the prior payment in full of all allowed general unsecured claims.

15.    **Priority of Liens**. Subject to paragraph 12(c) of this DIP Order:

(a)    The DIP Liens shall constitute valid, enforceable, non-avoidable and duly perfected first-priority security interests in and liens upon the DIP Collateral senior in priority

13

and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral (subordinate only to the Carve Out).

(b)     The DIP Liens shall not be subordinated to or made pari passu with any other lien under section 364(d) of the Bankruptcy Code or otherwise, including by any order heretofore or hereafter entered in the Chapter 11 Case or any Successor Case. Except as expressly permitted in the respective DIP Documents and absent full payment and satisfaction of all obligations of the Debtor under the DIP Loan, the Debtor shall not (i) grant or impose any liens on the DIP Collateral or (ii) except as permitted in the respective DIP Documents, prime or seek to prime the DIP Liens and shall not offer any other parties any lien on the DIP Collateral. In addition, the Debtor shall not incur, create, assume, become or be liable in any manner with respect to, or permit to exist, any secured indebtedness, except as expressly permitted under the DIP Documents and the Budget.

16.     **Validity of Liens**.

(a)     In no event shall any person or entity who pays (or through the extension of credit to the Debtor, causes to be paid) any of the respective DIP Obligations, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon the DIP Lender by the terms of the DIP Order, or any of the respective DIP Documents, until all of the DIP Obligations are paid in full in cash in accordance with the DIP Order or any of the respective DIP Documents.

(b)     The DIP Liens and the DIP Superpriority Claims shall continue in any Successor Case for the Debtor under any chapter of the Bankruptcy Code, and all liens, security interests and claims shall maintain their priority as provided in the DIP Order. If an order dismissing the Chapter 11 Case, pursuant to section 1112 of the Bankruptcy Code or otherwise,

14

is at any time entered, such order shall provide that the DIP Liens and the DIP Superpriority

Claims shall continue in full force and effect, shall remain binding on all parties in interest in the

Chapter 11 Case, and shall maintain their priorities as provided in the DIP Order, until all DIP

Obligations under the DIP Documents have been paid and satisfied in full and in cash.

Notwithstanding the dismissal of the Chapter 11 Case, this Court shall retain jurisdiction with

respect to enforcing the DIP Liens and the DIP Superpriority Claims.

                17.     **Carve Out**. Notwithstanding anything in the DIP Order, any other DIP

Documents or any other order of this Court to the contrary, all claims and liens granted

hereunder to or for the benefit of the DIP Lender, including the DIP Superpriority Claims and the

DIP Liens, shall be subject to payment of the Carve Out. As used in the DIP Order, the "Carve

Out" means: (i) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to

the Office of the United States Trustee under section 1930(a) of title 28 of the United States

Code in such amounts as determined in agreement with the United States Trustee or by final

order of the Court; (ii) all reasonable fees and expenses incurred by a trustee under section

726(b) of the Bankruptcy Code not to exceed $25,000; (iii) after the occurrence and during the

continuance of an Event of Default (as defined in the Term Sheet), all allowed and unpaid

professional fees and disbursements incurred by the Debtor and the Committee that remain

unpaid subsequent to the payment, pro rata with other non-priority administrative creditors, of

such fees and expenses from available funds remaining in the Debtor's estate for such creditors,

in an aggregate amount not exceeding $100,000 for the payment of the Debtor's professionals

and $30,000 for payment of Committee professionals, which amount may be used subject to the

terms of the Term Sheet and the DIP Order (the "Permitted Professional Fees"); and (iv) all

allowed and unpaid professional fees and disbursements (regardless of when such fees and

disbursements become allowed by order of the Court) incurred or accrued by the Debtor and the Committee at any time when no Event of Default is continuing, that remain unpaid subsequent to an Event of Default, in an aggregate amount not exceeding such unpaid professional fees and disbursements reflected on the most recent Professional Fee Budget delivered to and approved by the DIP Lender prior to any Event of Default that is then continuing, to be supported by back-up documentation in respect of the amounts and dates of incurrence of such fees and disbursements, in each of the foregoing clauses (i), (ii), (iii) and (iv), to the extent allowed by the Court at any time; provided, however, that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (iii) and (iv) above. A current 13-week Professional Fee Budget is attached hereto as Exhibit 2.

18.     **Limitation on Carve Out**. No portion of the Carve Out may be used to challenge the debt or collateral position of the DIP Lender, whether by challenging the validity of the indebtedness or the validity, perfection or priority of any security interest or lien or by seeking to invalidate, avoid, subordinate or otherwise impair any claim, security interest or lien or priorities created in connection with the DIP Financing, or by asserting any claim for damages allegedly arising out of the actions or inactions of the DIP Lender, or by seeking to recover on any transfers made to the DIP Lender.

19.     **Termination of DIP Financing**. The Debtor's authorization to use the DIP Financing shall immediately terminate upon the occurrence of a "Termination Event," which shall mean the earliest to occur of (i) the expiration of five (5) business days (the "Default Notice Period") following the provision of written notice to the Debtor (with a copy of such notice provided to counsel for the Debtor, counsel for the Committee, and the U.S. Trustee) upon

16

the occurrence of an Event of Default; (ii) the occurrence of the Maturity Date as that term is defined in the Term Sheet; and (iii) the date on which the DIP Order is no longer in full force and effect.

20. **Perfection of Liens**. The DIP Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of executing, filing or recording any mortgage, security agreement, pledge agreement, financing statement or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule or regulation of any jurisdiction to validate or perfect the DIP Liens or to entitle the DIP Lender to the priorities granted herein. The Debtor may execute, and the DIP Lender is hereby authorized to execute, file and/or record mortgages, security agreements, pledge agreements, financing statements and/or other instruments or documents to evidence the DIP Liens, and the Debtor is hereby authorized, promptly upon a demand by the DIP Lender made in accordance with the terms of the DIP Documents, to execute, file and/or record any such mortgages, security agreements, pledge agreements, financing statements or other instruments or documents as the DIP Lender may request; provided, however, that no such execution, filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, and further, if the DIP Lender chooses to execute, file and/or record such mortgages, security agreements, pledge agreements, financing statements or other instruments or documents, or otherwise confirm perfection of such liens, all such instruments and documents shall be deemed to have been filed or recorded as of the Petition Date. A copy of the DIP Order may, in the discretion of the DIP Lender, be filed with or recorded in any filing or recording office in addition to or in lieu of such mortgages, security agreements, pledge agreements, financing statements or other instruments or documents, and each and every federal, state and local

17

governmental agency, department or office is hereby directed to accept a copy of the DIP Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the DIP Order and the other DIP Documents, for filing and recording, and to deem the DIP Order to be in proper form for filing and recording. Notwithstanding the foregoing, pursuant to any applicable law, the DIP Lender is hereby authorized (but not required) to file or record financing statements and other filing or recording documents or instruments with respect to the DIP Collateral and DIP Liens, as applicable, without the signature of the Debtor in such form and in such offices as the DIP Lender determines is appropriate to perfect the security interests of the DIP Lender under the DIP Documents and the DIP Order and the DIP Lender is authorized to use collateral descriptions such as "all personal property" or "all assets," in each case "whether now owned or hereafter acquired," words of similar import or any other description the DIP Lender in its sole discretion, so chooses in any such financing statements.

21.     **Payment of Professional Fees**. The Debtor shall reimburse the DIP Lender for professional fees and expenses incurred by the DIP Lender in connection with DIP Loan, without the necessity of any further application with the Court for approval or payment of such fees or expenses, in an amount not to exceed $20,000. Professionals for the DIP Lender shall not be required to file fee applications, provided that invoices (subject in all respects to applicable privilege and work product doctrines) shall be provided to counsel for the Debtor, the Committee and the U.S. Trustee, which parties shall have ten (10) days to object to such invoices.

22.     **Indemnity**. The DIP Lender (and its affiliates, officers, directors, employees, advisors and agents), solely in its capacity as DIP Lender, shall be and hereby is

indemnified and held harmless by the Debtor in respect of any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent it is found by a final, non-appealable judgment of a court to arise from the gross negligence, willful misconduct or fraud of the DIP Lender. No exception or defense in contract, law or equity exists as to any obligation set forth in this paragraph or in the DIP Documents to indemnify and/or hold harmless the DIP Lender solely in its capacity as DIP Lender.

23. **Release from Lending Obligations.** Upon the repayment of all DIP Obligations owed to the DIP Lender by the Debtor and termination of the rights and obligations arising under the DIP Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Lender), the DIP Lender, in its capacity as such, shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Documents or this Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to subordinate its recovery or to pay or otherwise fund the Carve Out expenses), except to the extent it is found by a final, non-appealable judgment of a court to arise from the gross negligence, willful misconduct or fraud of the DIP Lender. Notwithstanding anything to the contrary herein, the Debtor's releases do not extend to (i) the DIP Lender's obligations to make the DIP Loans or (ii) the DIP Lender's obligations to comply with the terms of the DIP Documents.

24. **Debtor's Waivers.** At all times during the Chapter 11 Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to (i) challenge the application of any payments authorized by the DIP Order pursuant to section

19

506(b) of the Bankruptcy Code; (ii) seek authority to grant liens on the DIP Collateral, or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise; or (iii) seek authority to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than from the DIP Lender, or as may be otherwise expressly permitted under the DIP Documents, unless the Debtor uses the proceeds of such postpetition loans or other financial accommodations to pay in full in cash all DIP Obligations or the DIP Lender has provided their prior written consent to such action. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor hereby waives its right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender, as set forth in the DIP Order or the other DIP Documents, other than to contest whether an Event of Default has occurred or is continuing.

25. **Disposition of Collateral**. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral in any way inconsistent with the terms and conditions of the DIP Documents without the prior written consent of the DIP Lender and an order of the Court. In the absence of express prior written consent, no consent to a sale, transfer, lease, encumbrance or other disposition of any portion of the DIP Collateral shall be implied from any action, inaction or acquiescence by the DIP Lender. Until all DIP Obligations are paid and satisfied in full and in cash in accordance with the terms of the DIP Documents on terms and conditions acceptable to the DIP Lender, the proceeds of any sale of the DIP Collateral (other than sales in the ordinary course of business) shall be applied in the following order: (i) to pay or fund an escrow account or a restricted account maintained by

counsel for the Debtor in the amount of (x) all allowed and unpaid professional fees and

disbursements (regardless of when such fees and disbursements become allowed by order of the

Court) incurred or accrued by the Debtor and the Committee at any time on or prior to the date of

the closing of the sale in an aggregate amount not exceeding such unpaid professional fees and

disbursements reflected on the Professional Fee Budget and not to exceed the Carve Out plus (y)

accrued administrative expenses of the types included in the Carve Out; (ii) to pay the

professional fees and expenses incurred by the DIP Lender in connection with DIP Loan, in an

amount not to exceed $20,000; (iii) to pay any interest which is then due and payable; (iv) to pay

any interest with respect to the principal amount being repaid which has accrued but is not yet

due and payable; and (v) to pay the principal amount of DIP Loans.

26.    **Modification of Stay; Rights and Remedies Upon Termination**.

(a)    Upon the occurrence of a Termination Event, the automatic stay

provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to

the extent necessary to permit the DIP Lender to exercise all rights and remedies provided in the

DIP Order and the other DIP Documents, as applicable, and to take any or all of the following

actions without further order of or application to this Court: (i) immediately cease making any

DIP Loans to the Debtor; (ii) immediately declare all DIP Obligations to be immediately due and

payable; (iii) immediately terminate the DIP Loan and the availability of any DIP Loans

thereunder; (iv) immediately set off any and all amounts held on account of or owed to the

Debtor against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the

possession of, or subject to a lien in favor of the DIP Lender for application towards the DIP

Obligations; and (v) take any other actions or exercise any other rights or remedies permitted

under the DIP Order and the other DIP Documents or applicable law to effect the repayment of

21

the DIP Financing; provided that notwithstanding anything herein to the contrary, the DIP Lender shall not enforce any DIP Liens against the DIP Collateral or exercise any other remedies prior to the expiration of the Default Notice Period.

(b)     The automatic stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided in paragraph 26(a) above, effective following the expiration of the Default Notice Period, unless the Court has determined that an Event of Default has not occurred and/or is not continuing. Unless otherwise ordered by the Court, any party in interest's sole recourse with respect to opposing such modification of the automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence and/or continuance of an Event of Default. During the Default Notice Period, the Debtor shall (i) have no right to request extensions of credit under the DIP Loan, other than with the consent of the DIP Lender; and (ii) be entitled to an emergency hearing before the Court, with proper notice to the DIP Lender, solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing. The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Documents, or otherwise. The Debtor shall cooperate fully with the DIP Lender in any permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

27.     **Survival of DIP Order**. The provisions of the DIP Order and any actions taken pursuant thereto (i) shall survive the entry of any order: (x) confirming any chapter 11 plan in the Chapter 11 Case; (y) converting the Chapter 11 Case to a Successor Case; or (z) dismissing the Chapter 11 Case; and (ii) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens and security interests granted pursuant to the DIP Order shall maintain their priority as provided by the DIP Order until all of

22

the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP

Documents. The applicable DIP Obligations shall not be discharged by the entry of any order

confirming any chapter 11 plan in the Chapter 11 Case that does not provide for payment in full

of the DIP Obligations unless the DIP Lender otherwise agrees in writing, and, only upon the

entry of any such order, the Debtor shall, and shall be deemed to, waive any such discharge

pursuant to section 1141(d)(4) of the Bankruptcy Code.

28.     **No Waiver**. The DIP Order shall not be construed in any way as a waiver

or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter

brought before this Court.

29.     **Reservation of Rights**. The terms, conditions and provisions of the DIP

Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and

all rights and remedies under the Bankruptcy Code, the DIP Documents or any other applicable

agreement or law, including, without limitation, rights to (i) seek relief from the automatic stay;

(ii) seek an injunction; (iii) oppose any future request for the granting of any interest in the DIP

Collateral or of priority in favor of any other party; (iv) object to any sale of assets; or (v) object

to applications for allowance or payment of compensation of professionals or other parties

seeking compensation or reimbursement from the Debtor's estate.

30.     **No Consent**. No action, inaction or acquiescence by the DIP Lender,

including funding the Debtor's operations under the DIP Order, shall be deemed to be or shall be

considered as evidence of any alleged consent by the DIP Lender to a charge against the DIP

Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code. The DIP

Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or

any similar doctrine with respect to the DIP Collateral.  The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

      31.    **Binding Effect; Successors and Assigns**.  Except as otherwise provided in the DIP Documents, the provisions of the DIP Order shall be binding upon and inure to the benefit of the DIP Lender and the Debtor, and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of the Debtor, its estate or with respect to the property of its estate) whether in the Chapter 11 Case, in any Successor Case or upon dismissal of the Chapter 11 Case or a Successor Case; provided, however, that the DIP Lender shall have no obligation to extend any financing to, or permit the use of DIP Collateral by, any chapter 7 or chapter 11 trustee or similar representative person appointed for the Debtor's estate.

      32.    **Proofs of Claim**.  Notwithstanding anything to the contrary contained in any prior or subsequent order of this Court, the DIP Lender shall not be required to file a proof of claim in the Chapter 11 Case or any Successor Case in order to maintain the DIP Lender's claims with respect to the DIP Obligations, all of which shall be due and payable in accordance with the DIP Order and the other DIP Documents, without the necessity of filing any such proof of claim and the statements of claim in respect of the respective DIP Obligations set forth in the DIP Order, together with the evidence accompanying the Motion, and presented at the Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

      33.    **DIP Order Effective Immediately**.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024 or any other Bankruptcy Rule, or Rule 62(a) of the

Federal Rules of Civil Procedure, the DIP Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of the DIP Order.

34.    **DIP Order Governs**.  In the event of any inconsistency or conflict between any of the terms and provisions of the DIP Order and the DIP Documents, the terms and provisions of the DIP Order shall govern.

35.    **Amendment to Term Sheet**.  The condition precedent to funding under the Term Sheet that the Court shall have entered an order on or before June 19, 2015 approving the Denan Stalking Horse APA and the Bidding Procedures shall be deemed satisfied if the Court enters an order approving the Bidding Procedures, in the form attached to the Debtor's motion for approval of the Bidding Procedures or such other form acceptable to the DIP Lender in its sole discretion, on or before June 19, 2015.

36.    **Monitoring of Collateral**.  The DIP Lender, and its consultants and advisors, shall be given reasonable access to the Debtor's books, records, assets and property.

37.    **Financial Reporting**.  The Debtor shall provide the DIP Lender and the Committee with the monthly financial reporting given to the U.S. Trustee and all of the financial reporting as required under and in all instances consistent with the DIP Documents.  Any certifications, reports, projections or other documents that the Debtor provides to the DIP Lender under the DIP Documents shall simultaneously be provided to counsel for the Committee.

38.    **Cash Management**.  The Debtor's cash management system shall at all times be maintained (i) in accordance with any order of the Court approving the maintenance of the Debtor's cash management system; and (ii) in a manner which is otherwise reasonably satisfactory to the DIP Lender.  The DIP Lender shall be deemed to have "control" over all such accounts for all purposes of perfection under the Uniform Commercial Code.

39.     **Credit Bidding**. The DIP Lender shall have the unqualified right to credit bid up to the full amount of the applicable outstanding DIP Obligations, including any accrued interest, in any sale of the DIP Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

40.     **No Third Party Rights**. Except as explicitly provided for herein, the DIP Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the DIP Lender and the Debtor, and their respective successors and assigns.

41.     **Headings**. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting the DIP Order.

42.     **Retention of Jurisdiction**. The Court retains jurisdiction to interpret, implement, and enforce the provisions of the DIP Order and the other DIP Documents.

43.     **Subsequent Reversal or Modification**. The DIP Order is entered pursuant to, inter alia, section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), granting the DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the provisions of the DIP Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the DIP Lender prior to the date of receipt by the DIP Lender of written notice of the effective date of such action; (ii) the payment of any fees required under the DIP Order or the other DIP Documents; or (iii) the validity and enforceability of any lien, claim, obligation or priority authorized or created under the DIP Order or pursuant to the other DIP Documents as of such date. Notwithstanding any such reversal, stay, modification or vacatur,

26

any postpetition indebtedness, obligation or liability incurred by the Debtor to the DIP Lender,

prior to written notice being delivered to the DIP Lender of the effective date of such action,

shall be governed in all respects by the original provisions of the DIP Order, and the DIP Lender

shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP

Documents with respect to all such indebtedness, obligations or liability.


Dated: June 19, 2015
      Wilmington, Delaware

                              The Honorable Brendan Linehan Shannon
                              Chief United States Bankruptcy Judge