## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
EGENIX, INC.,                                           :    Case No. 14-12818 (BLS)
                                                        :
          Debtor.¹                                      :    Related to Docket Nos. 246 and 328
                                                        :
------------------------------------------------------- x
```

## ORDER PURSUANT TO SECTIONS
## 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND
## BANKRUPTCY RULES 2002, 6004 AND 6006 AUTHORIZING
## (I) THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS
## FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; AND
## (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS

Upon the motion (the "Motion")² of Egenix, Inc., the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor") for, among other things, entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1 and 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving the sale of substantially all of the Debtor's assets (the "Acquired Assets")³ free and clear of all liens, claims and encumbrances

---

¹    The last four digits of the Debtor's federal tax identification number are 0172.  The mailing address for the Debtor is 2363 Clove Road, LaGrangeville, NY 12540.

²    All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

³    The Acquired Assets consist of substantially all of the Debtor's assets and shall have the meaning set forth in Section 2(a) of the APA (as defined below).  Acquired Assets do not include the Excluded Assets as referenced in Section 2(b) of the APA or any assets of the Debtor not subject to the APA.

(other than with respect to Assumed Liabilities (as defined in the Motion)[4]) (the "Sale Transaction") to Denan. Inc., a Delaware corporation ("Denan") or a designated affiliate (the "Stalking Horse Purchaser"), or to the bidder making the highest and otherwise best bid (the "Successful Bidder") at the Auction, pursuant to an asset purchase agreement, and (ii) authorizing the assumption and assignment of certain executory contracts as described in the asset purchase agreement (the "Assigned Contracts"); and upon the Declaration of William T. Nolan (the "Nolan Declaration") [Docket No. 314]; the Declaration of Manager of Bantam Pharmaceutical, LLC in Support of Debtor's Motion for Order Authorizing (A) the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances; and (B) Assumption and Assignment of Certain Executory Contracts [Docket No. 323]; and the Court having held a hearing on July 23, 2015 (the "Sale Hearing") to approve the Sale Transaction; and the Court having reviewed and considered (a) the Motion, (b) the objections to the Motion, if any, and (c) the arguments of counsel made, and the evidence proffered or adduced at the hearing on June 19, 2015, and at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors and other parties in interest; and upon the record of the Sale Hearing and the Chapter 11 Case (as defined below); and after due deliberation thereon; and good cause appearing therefor, it is hereby,

### FOUND AND DETERMINED THAT:[5]

A.     **Jurisdiction and Venue**. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[4]     All subsequent references to "Assumed Liabilities" shall have the meaning defined in the APA.

[5]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. See Fed. R. Bankr. P. 7052 and 9014.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and Local Rules 6004-1 and 9006-1(e).

C.    **Petition Date**.  On December 28, 2014 (the "Petition Date"), the Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

D.    **Entry of Bidding Procedures Order and Denan DIP Order**.  On June 19, 2015, this Court entered an order [Docket No. 271] (the "Bidding Procedures Order") (i) approving the Bidding Procedures; (ii) approving the Bid Protections; (iii) scheduling the Auction and the Sale Hearing; and (iv) approving the form and manner of notice of the respective date, time and place for an the Auction and the Sale Hearing and an order [Docket No. 272] (the "Denan DIP Order") (i) authorizing Debtor to Obtain Alternative Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 362 and 364 and (ii) Granting Liens and Superpriority Claims to DIP Lender Pursuant to 11 U.S.C. § 364.

E.    **Compliance with Bidding Procedures Order**.  As demonstrated by (i) the Nolan Declaration; (ii) the testimony and other evidence proffered or adduced at the hearing on the Bidding Procedures and at the Sale Hearing; and (iii) the representations of counsel made on the record at the Sale Hearing, the Debtor has marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order, and the Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.  The Debtor and its professionals conducted the sale process in compliance with the Bidding Procedures Order, and have afforded potential purchasers a full and fair opportunity to make higher and better offers.  Bantam Pharmaceutical, LLC (the "Purchaser") acted in compliance

3

with the terms of the Bidding Procedures. In accordance with the Bidding Procedures, the Debtor determined, in consultation with the Committee, that the bid submitted by the Purchaser and memorialized by the Asset Purchase Agreement dated July 20, 2015 between the Debtor and Purchaser (attached hereto as Exhibit 1, as may be amended, supplemented or restated, the "APA") is the Successful Bid (as defined in the Bidding Procedures). The APA constitutes the highest and otherwise best offer for the Acquired Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the APA constitutes the highest and otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment.

F.    **Notice**. As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the Sale Transaction, the procedures for assumption and assignment of the Assigned Contracts (including the objection deadline with respect to any Cure Amount) and the assumption and assignment of the Assigned Contracts and the Cure Amounts has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9007 and the Local Rules and in compliance with the Bidding Procedures Order; and (ii) no other or further notice of the Motion, the Sale Hearing, the Sale Transaction or the assumption and assignment of the Assigned Contracts or the Cure Amounts is or shall be required. With respect to entities whose identities are not reasonably ascertained by the Debtor, publication of notice of the proposed Sale Transaction in *The New York Times* on June 25, 2015, was sufficient and reasonably calculated under the circumstances to reach such entities. See Docket No. 295.

G. **Corporate Authority**. The Debtor (i) has full corporate power and authority to execute the APA and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtor; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the APA; (iii) has taken all corporate action and formalities necessary to authorize and approve the APA and the consummation by the Debtor of the transactions contemplated thereby, including as required by its organizational documents; and (iv) no government, regulatory or other consents or approvals, other than those expressly provided for in the APA, are required for the Debtor to enter into the APA and consummate the Sale Transaction.

H. **Opportunity to Object**. A fair and reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein, has been given to all interested persons and entities, including the following: (i) all counterparties to the Assigned Contracts; (ii) all known creditors and interest holders of the Debtor; and (iii) all applicable federal, state and local taxing and regulatory authorities.

I. **Sale in Best Interest**. Consummation of the sale of the Acquired Assets to the Purchaser at this time is in the best interests of the Debtor, its creditors, its estate and other parties in interest.

J. **Business Justification**. Sound business reasons exist for the Sale Transaction. Entry into the APA, and the consummation of the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the Assigned Contracts, constitutes the Debtor's exercise of sound business judgment and such acts are in the best interests of the Debtor, its estate, its creditors and all parties in interest. The Court finds that

5

the Debtor has articulated good and sufficient business reasons justifying the Sale Transaction. Such business reasons include, but are not limited to, the following: (i) the APA constitutes the highest and otherwise best offer for the Acquired Assets; (ii) the APA and the closing thereon will present the best opportunity to realize the value of the Acquired Assets on a going concern basis and avoid decline and devaluation of the Acquired Assets; and (iii) unless the Sale Transaction and all of the other transactions contemplated by the APA are concluded expeditiously, as provided for in the Motion and pursuant to the APA, recoveries to creditors may be jeopardized.

K.      The Debtor and its professionals actively marketed the Acquired Assets to potential purchasers as set forth in the Nolan Declaration and in accordance with the Bidding Procedures Order. The bidding and auction process set forth in the Bidding Procedures Order and the Bidding Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets. Based upon the record of this proceeding, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Assets.

L.      No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would give equal or greater economic value to the Debtor than the value being provided by the Purchaser pursuant to the APA. Among other things, the Sale Transaction is the best alternative available to the Debtor to maximize the return to its creditors. The terms and conditions of the APA, including the consideration to be realized by the Debtor, are fair and reasonable. Approval of the Motion, the APA and the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the

Assigned Contracts, is in the best interests of the Debtor, its estate and creditors, and all other parties in interest.

        M.     **Arm's-Length Sale**. The APA was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good faith, and from arm's- length bargaining positions. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

        N.     **Good Faith Purchaser**. The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law. Specifically: (i) the Purchaser recognized that the Debtor was free to deal with any other party interested in purchasing the Acquired Assets; (ii) the Purchaser complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Purchaser in connection with the Sale Transaction have been disclosed; (v) the negotiation and execution of the APA was at arm's-length and in good faith, and at all times each of the Purchaser and the Debtor was represented by competent counsel of its choosing; and (vi) the Purchaser has not acted in a collusive manner with any person. The Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the APA.

        O.     **Free and Clear**. The Debtor is the sole and lawful owner of the Acquired Assets and holds good title thereto. The Debtor may sell the Acquired Assets free and clear of

7

all obligations, Excluded Liabilities, claims (within the meaning of section 101(5) of the

Bankruptcy Code), cause of action, chose in action, charge, right of set off, recoupment, rebate,

chargeback, credit or return, encumbrances and similar restrictions (other than Assumed

Liabilities) (collectively, the "Encumbrances") because, with respect to each creditor asserting a

lien, claim, encumbrance or interest, one or more of the standards set forth in section 363(f)(1)-

(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances who did not

object or withdrew objections to the Sale Transaction are deemed to have consented to the Sale

Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of

Encumbrances who did object fall within one or more of the other subsections of section 363(f)

of the Bankruptcy Code.  Provided, that, any Encumbrances arising under the Denan DIP Order

and related financing facility shall attach to the proceeds of the Sale Transaction in the same

order of priority, with the same validity, force and effect that they had immediately prior to the

Sale Transaction, subject to any rights, claims and defenses that the Debtor, the Debtor's estate

or any trustee or other representative for the Debtor or the Debtor's estate, as applicable, may

possess with respect thereto.

   P. The Purchaser would not have entered into the APA and would not

consummate the transactions contemplated hereby, including the Sale Transaction and the

assumption and assignment of the Assigned Contracts, (i) if the transfer of the Acquired Assets

were not free and clear of all Encumbrances of any kind or nature whatsoever, including rights or

claims based on any successor or transferee liability, or (ii) if the Purchaser would, or in the

future could, be liable for any Encumbrances, including rights or claims based on any successor

or transferee liability.  The Purchaser will not consummate the transactions contemplated by the

APA, including the Sale Transaction and the assumption and assignment of the Assigned

8

Contracts, unless this Court expressly orders that none of the Purchaser, its affiliates, its present or contemplated members, or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff or otherwise, directly or indirectly, any Encumbrances, including rights or claims based on any successor or transferee liability.

Q.    Not transferring the Acquired Assets free and clear of all Encumbrances of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, would adversely impact the Debtor's efforts to maximize the value of its estate, and the transfer of the Acquired Assets other than pursuant to a transfer that is free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtor's estate.

R.    **Assumption of Executory Contracts**.  The (i) transfer of the Acquired Assets to the Purchaser and (ii) assignment to the Purchaser of the Assigned Contracts, will not subject the Purchaser to any liability whatsoever relating to the period prior to the Closing Date (as defined below) or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any theory of equitable law, including any theory of antitrust, successor or transferee liability.  The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the consummation of the Sale Transaction, and the assumption and assignment of the Assigned Contracts is the best interests of the Debtor, its estate and its creditors.  The Assigned Contracts being assigned to the Purchaser are an integral part of the Acquired Assets being purchased by the Purchaser and, accordingly, such assumption and

9

assignment of Assigned Contracts is reasonable, enhances the value of the Debtor's estate and does not constitute unfair discrimination.

S.    **Cure/Adequate Assurance**.  The Purchaser has (i) cured, or has provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts within the meaning of section 365(b)(l)(B) of the Bankruptcy Code.  The Purchaser has provided adequate assurance of future performance of and under the Assigned Contracts within the meaning of section 365(b)(l)(C) of the Bankruptcy Code.

T.    **Prompt Consummation**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is of the essence in consummating the Sale Transaction, and the Debtor and the Purchaser intend to close the Sale Transaction as soon as reasonably practicable.  The Debtor has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the APA.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regard to the transactions contemplated by this Sale Order.

U.    **No Fraudulent Transfer**.  The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  The Purchaser is not a mere continuation, and is not holding itself out as a mere continuation, of the Debtor or its

estate and there is no continuity between the Purchaser and the Debtor. The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor.

   V. The consideration provided by the Purchaser for the Acquired Assets pursuant to the APA (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Acquired Assets; (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

   W. **No Successor Liability**. The transfer of the Acquired Assets and the assumption of the Assumed Liabilities (including any individual elements of the Sale Transaction) to the Purchaser, except as otherwise expressly set forth in the APA, does not, and will not, subject the Purchaser to any liability whatsoever, with respect to the operation of the Debtor's business prior to the closing of the Sale Transaction or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including any laws affecting antitrust, successor, transferee or vicarious liability. Pursuant to the APA, the Purchaser is not purchasing all of the Debtor's assets in that the Purchaser is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Purchaser is not holding itself out to the public as a continuation of the Debtor. The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor and/or the Debtor's estate. There is not substantial continuity between the Purchaser and the Debtor, and there is no continuity of enterprise between the Debtor and the Purchaser. The Purchaser is

11

not a mere continuation of the Debtor or the Debtor's estate, and the Purchaser does not constitute a successor to the Debtor or the Debtor's estate.

   X. **Legal, Valid Transfer**.  The transfer of the Acquired Assets to the Purchaser will be a legal, valid and effective transfer of the Acquired Assets, and will vest the Purchaser with all right, title and interest of the Debtor to the Acquired Assets free and clear of all Encumbrances (other than with respect to Assumed Liabilities), as set forth in the APA.  The Acquired Assets constitute property of the Debtor's estate and good title is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.  The Debtor is the sole and rightful owner of the Acquired Assets, and no other person has any ownership right, title or interests therein.

   Y. **APA Terms Fair and Reasonable**.  The terms of the APA, including any amendments, supplements and modifications thereto, are fair and reasonable in all respects.

   Z. **Not a Sub Rosa Plan**.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale Transaction neither impermissibly restructures the rights of the Debtor's creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtor.

   AA. **Legal and Factual Bases**.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

   **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

   1. The Motion and the relief requested therein is **GRANTED** and **APPROVED** as set forth herein.

2.    Objections that have not been withdrawn, waived or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

## Approval of the Sale of the Acquired Assets

3.    The APA, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

4.    Pursuant to section 363(b) of the Bankruptcy Code, the sale of the Acquired Assets to the Purchaser free and clear of all Encumbrances (other than with respect to Assumed Liabilities), and the transactions contemplated by the APA are approved in all respects.

## Sale and Transfer of Acquired Assets

5.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is hereby authorized and directed to sell the Acquired Assets to the Purchaser and consummate the Sale Transaction in accordance with, and subject to the terms and conditions of, the APA, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the APA, and is further authorized and directed to execute and deliver, and is empowered to perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, including the Mutual Release Agreement (attached hereto as Exhibit 2), the form of which is hereby approved, and all related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the APA.

13

6.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be transferred to the Purchaser upon consummation of the APA (the "Closing Date") free and clear of all Encumbrances of any kind or nature whatsoever (other than with respect to Assumed Liabilities), including rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) based on any successor or transferee liability, including all claims and/or interests arising in any way in connection with any agreements, acts or failures to act, of the Debtor or any of the Debtor's predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising before or subsequent to the commencement of the Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under federal or state laws or doctrines of successor or transferee liability.  Any Encumbrances arising under the Denan DIP Order and related financing facility shall attach to the proceeds of the Sale Transaction in the same order of priority, with the same validity, force and effect that they had immediately prior to the Sale Transaction, subject to any rights, claims and defenses that the Debtor, the Debtor's estate or any trustee or other representative for the Debtor or the Debtor's estate, as applicable, may possess with respect thereto.

7.      To the greatest extent allowable under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

14

8.      Following the Closing Date, the Debtor or the Purchaser is authorized and directed to execute and file a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances in the Acquired Assets of any kind or nature whatsoever.  On the Closing Date, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to the Purchaser.  On the Closing Date, this Order also shall be construed, and constitute for any and all purposes, a complete and general assignment of all right, title and interest of the Debtor and the bankruptcy estate to the Purchaser in the Assigned Contracts.  Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

9.      All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

10.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Acquired Assets to the Purchaser in accordance with the APA and this Order; provided, however, that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order.

11.      Except as expressly permitted by the APA or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers, employees,

litigation claimants, and other creditors, holding Encumbrances of any kind or nature whatsoever, including rights, interests or claims based on any successor or transferee liability, against or in the Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Acquired Assets or the operation of the Acquired Assets, or the transactions contemplated by the APA, including the Sale Transaction and the assumption and assignment of the Assigned Contracts, are forever barred, estopped and permanently enjoined from asserting against the Purchaser, its respective successors and assigns, their respective property and the Acquired Assets, such persons' or entities' Encumbrances, including such rights, interests or claims based on any successor or transferee liability.

12.    On the Closing Date of the Sale Transaction, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Encumbrances on the Acquired Assets, if any, as such Encumbrances may have been recorded or otherwise exist.

13.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Acquired Assets on account of the filing or pendency of the Chapter 11 Case or the consummation of the transactions contemplated by the APA, including the Sale Transaction and the assumption and assignment of the Assigned Contracts.

14.    Subject to the terms and conditions of this Order, the transfer of the Acquired Assets to the Purchaser pursuant to the APA constitutes a legal, valid and effective transfer of the Acquired Assets, and shall vest the Purchaser with all right, title and interest of the

16

Debtor in and to the Acquired Assets free and clear of all Encumbrances (other than with respect to Assumed Liabilities) of any kind or nature whatsoever.

**No Successor Liability**

15.    The Purchaser is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the Purchaser shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of the Debtor and/or its estate, other than the Assumed Liabilities, with respect to the Acquired Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability.  Except to the extent the Purchaser assumes Assumed Liabilities and is ultimately permitted to assume the Assigned Contracts pursuant to the APA, neither the purchase of the Acquired Assets by the Purchaser nor the fact that the Purchaser is using any of the Acquired Assets previously used by the Debtor will cause the Purchaser to be deemed a successor in any respect to the Debtor's business or incur any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor (including any WARN Act), employment, environmental or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

16.    The Purchaser has given substantial consideration under the APA, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser and which shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances in or against the Debtor, or the Acquired Assets.  Upon consummation of the Sale Transaction, the Purchaser shall not be deemed to (i) be the successor to the Debtor; (ii) have, *de facto* or otherwise, merged with or into the Debtor; or (iii) be a mere continuation, alter ego or substantial continuation of the Debtor.

17

17.     Except to the extent specifically agreed by the Purchaser in the APA or this Order, the Purchaser shall not have any liability, responsibility or obligation for any Encumbrances of the Debtor or its estate, including any claims, liabilities or other obligations related to the Acquired Assets prior to Closing Date. Under no circumstances shall the Purchaser be deemed a successor of or to the Debtor for any Encumbrances against, in or to the Debtor or the Acquired Assets. For the purposes of this section of this Order, all references to the Purchaser shall include the Purchaser's affiliates, subsidiaries and shareholders.

**Good Faith**

18.     The transactions contemplated by the APA are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale Transaction shall not affect the validity of the sale of the Acquired Assets to the Purchaser. The Purchaser is a purchaser in good faith of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

19.     As a good faith purchaser of the Acquired Assets, the Purchaser has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtor nor any successor in interest to the Debtor's estate shall be entitled to bring an action against the Purchaser, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

18

**Assumption and Assignment of Assigned Contracts**

20.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale Transaction, the Debtor's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the APA, of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

21.    The Debtor is hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective upon the Closing Date of the Sale Transaction, the Assigned Contracts free and clear of all Encumbrances of any kind or nature whatsoever and; (ii) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

22.    The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Purchaser, except as provided in the APA.

23.    Upon the Debtor's assignment of the Assigned Contracts under the provisions of this Sale Order, no default shall exist under any Assigned Contract and no counterparty to any such Assigned Contract shall be permitted to declare or enforce a default by the Debtor or the Purchaser thereunder or otherwise take action against the Purchaser as a result of the Debtor's financial condition, change in control, bankruptcy or failure to perform any of its

19

obligations under the relevant Assigned Contract. Any provision in an Assigned Contract that prohibits or conditions the assignment or sublease of such Assigned Contract (including the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect only in connection with the assumption and assignment of such Assigned Contract to the Purchaser. The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtor's and the Purchaser's rights to enforce every term and condition of the Assigned Contract.

24.     As evidenced by the Notice of Potential Assumption and Assignment of Certain Executory Contracts in Connection with Sale of Substantially All of Debtor's Assets ("Notice") [Docket No. 278] and the lack of any objections to the Notice, there are no defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the date of this Order. The Purchaser shall have no liability or obligation arising or accruing prior to the Closing Adjustment Time, except as otherwise expressly provided in the APA.

25.     Each non-Debtor party to an Assigned Contract hereby is forever barred, estopped and permanently enjoined from raising or asserting against the Debtor or the Purchaser, or the property of either of them, any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the APA, including the Sale Transaction and the assumption and assignment of the Assigned Contracts. Any party that may have had the right to consent to the assignment of an Assigned

Contract is deemed to have consented to such assignment for purposes of section

365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to object to the assumption and

assignment of such Assigned Contract.

       26.     To the extent a counterparty to an Assigned Contract failed to timely

object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any

such counterparty shall be prohibited from challenging, objecting to or denying the validity and

finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely

revive any Assigned Contract to which it relates.

**Additional Provisions**

       27.     The consideration provided by the Purchaser for the Acquired Assets

under the APA shall be deemed to constitute reasonably equivalent value and fair consideration

under the Bankruptcy Code and under the laws of the United States, any state, territory,

possession or the District of Columbia.

       28.     Each and every federal, state and local governmental agency, court or

department is directed to accept any and all documents and instruments necessary and

appropriate to consummate the transactions contemplated by the APA.  On the Closing Date, the

Debtor and the Purchaser are authorized to take such actions as may be necessary to obtain a

release of any and all Encumbrances in the Acquired Assets, if any, and to the extent

contemplated hereby and by the APA.  This Order shall be (i) effective as a determination that,

on the Closing Date all Encumbrances of any kind or nature whatsoever existing as to the

Acquired Assets prior to the Closing Date have been unconditionally released, discharged and

terminated, and that the conveyances described herein have been effected; and (ii) binding upon

and shall govern the acts of all entities including all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state and local officials and all

other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Acquired

Assets. Each and every federal, state and local governmental agency or department is hereby

directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the APA. The Purchaser and the Debtor shall take

such further steps and execute such further documents, assignments, instruments and papers as

shall be reasonably requested by the other to implement and effectuate the transactions

contemplated in this paragraph. All interests of record as of the date of this Order shall be

forthwith deemed removed and stricken as against the Acquired Assets. All entities described in

this paragraph are authorized and specifically directed to strike all such recorded liens, claims,

rights, interests and encumbrances against the Acquired Assets from their records, official and

otherwise.

29.     If any person or entity that has filed statements or other documents or

agreements evidencing claims, liens, encumbrances or interests in any of the Acquired Assets

does not deliver to the Debtor or the Purchaser prior to the Closing Date, in proper form for

filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

releases of liens and easements and any other documents necessary for the purpose of

documenting the release of all interests that the person or entity has or may assert with respect to

any of the Acquired Assets, the Debtor and/or the Purchaser are hereby authorized to execute and

file such statements, instruments, releases and other documents on behalf of such person or entity

with respect to any of the Acquired Assets.

22

30.    The Debtor will cooperate with the Purchaser and the Purchaser will cooperate with the Debtor, in each case to ensure that the transaction contemplated in the APA is consummated, and the Debtor will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the APA.

31.    The Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Acquired Assets other than for the Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the APA, the Purchaser shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtor, the Acquired Assets or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of or in connection with, or in any way relating to the operation of the business.

32.    Under no circumstances shall the Purchaser be deemed a successor of or to the Debtor for any Encumbrance against or in the Debtor or the Acquired Assets of any kind or nature whatsoever.  The sale, transfer, assignment and delivery of the Acquired Assets and the Assigned Contracts shall not be subject to any Encumbrance and Encumbrances of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor.  All persons holding Encumbrances against, on or in the Debtor or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Encumbrances of any kind or nature

whatsoever against the Purchaser, its officers, directors, shareholders and professionals, its property, its successors and assigns, or the Acquired Assets with respect to any Encumbrance of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtor, its estate, officers, directors, shareholders or the Acquired Assets. Following the Closing Date, no holder of an Encumbrance in the Debtor shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets and the Assigned Contracts based on or related to such Encumbrance, or any actions that the Debtor may take in its Chapter 11 Case.

33.     The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor and its affiliates, successors and assigns, its estate and its creditors, the Purchaser and its respective affiliates, successors and assigns and any affected third parties including, but not limited to, all persons asserting Encumbrances on the Acquired Assets to be sold to the Purchaser pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

34.     The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

35.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate. To the extent that any provision of the APA conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.

24

36.     Nothing contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Case or any order of this Court confirming such plans or in any other order in the Chapter 11 Case, including any order entered after any conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with or derogate from, the provisions of the APA or the terms of this Order. The provisions of this Order and the APA and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtor, or which may be entered converting the Chapter 11 Case from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the APA as well as the rights and interests granted pursuant to this Order and the APA shall continue in the Chapter 11 Case or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtor, its estate and the Purchaser and their respective successors and permitted assigns, including any trustee, responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtor or its estate under chapter 7 or chapter 11 of the Bankruptcy Code.

37.     Any and all valid and perfected liens or interests in the Acquired Assets, including the DIP Liens (as defined in the Denan DIP Order), shall attach to any proceeds of the Sale Transaction immediately upon receipt of such proceeds by the Debtor with the same priority, validity, force and effect, if any, which they had immediately prior to entry of this Sale Order, subject to any rights, claims and defenses that the Debtor, the Debtor's estate or any trustee or other representative for the Debtor or the Debtor's estate, as applicable, may possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of this Order. Except as required by the APA, no proceeds subject to an asserted security interest or lien shall be used or disbursed by the Debtor without the express consent of

53653/0001-11915513v7

the party or parties asserting a security interest or lien therein or further order of the Bankruptcy

Court after notice and a hearing, consistent with the requirements of the Bankruptcy Code. The

Debtor is authorized to use the proceeds of the Sale Transaction to repay the DIP Obligations (as

defined in the Denan DIP Order) without further order of the Court and in the manner consistent

with the Denan DIP Order.

38.     The provisions of this Order are nonseverable and mutually dependent.

39.     Compliance with the legal requirements relating to bulk sales and transfers

is not necessary or appropriate under the circumstances.

40.     The Debtor and each other person having duties or responsibilities under

the APA or this Order, and their respective agents, representatives and attorneys, are authorized

and empowered to carry out all of the provisions of the APA, to issue, execute, deliver, file and

record, as appropriate, the APA, and any related agreements, and to take any action contemplated

by the APA or this Order, and to issue, execute, deliver, file and record, as appropriate, such

other contracts, instruments, releases, deeds, bills of sale, assignments or other agreements, and

to perform such other acts as are consistent with, and necessary or appropriate to, implement,

effectuate and consummate the APA and this Order and the transactions contemplated thereby

and hereby, all without further application to, or order of, the Court. Without limiting the

generality of the foregoing, this Order shall constitute all approvals and consents, if any, required

by applicable business corporation, trust and other laws of applicable governmental units with

respect to the implementation and consummation of the APA and this Order and the transactions

contemplated thereby and hereby.

41.     Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy

Rule 6006 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for

fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal will be foreclosed as moot.

42.     In the event that the Purchaser fails to consummate the Sale Transaction, the Backup Bidder (as defined in the Bidding Procedures) will be deemed to have the new prevailing bid, and the Debtor will be authorized, without further order of this Court, to consummate the Sale Transaction with the Backup Bidder.

43.     The Debtor shall promptly pay the Expense Reimbursement to the Stalking Horse Purchaser from the first cash proceeds of the Sale Transaction, notwithstanding anything herein or any terms of any debtor-in-possession financing order entered in the Chapter 11 Case to the contrary; provided, however, that the Stalking Horse Purchaser must provide reasonable documentation to support any claimed Expense Reimbursement to the Debtor, the Committee and the U.S. Trustee before payment of such reimbursement by the Debtor.

44.     This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Acquired Assets to the Purchaser free and clear of Encumbrances (other than with respect to Assumed Liabilities), or compel the performance of other obligations owed by the Debtor; (ii) compel delivery of the purchase price or performance of other obligations owed to the Debtor; (iii) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (iv) interpret, implement, and

enforce the provisions of this Order; and (v) protect the Purchaser against (a) claims made related to any of the Excluded Liabilities; (b) any claims of successor or vicarious liability related to the Acquired Assets or Assigned Contracts; or (c) any claims or Encumbrances asserted on or in the Debtor or the Acquired Assets, of any kind or nature whatsoever.

Dated: July **23**, 2015
      Wilmington, Delaware

                        The Honorable Brendan Linehan Shannon
                        Chief United States Bankruptcy Judge

53653/0001-11915513v7